OPINION OF THE COURT
Michael A. Ambrosio, J.
The defendant has filed an omnibus motion seeking various *772 forms of pretrial relief. The motions are decided as follows.
The defendant moves for an inspection of the grand jury minutes and a dismissal of the indictment or reduction of the charges.
On April 14, 2001, four semi-automatic rifles were recovered from the defendant’s residence. As a result, the defendant is charged, inter alia, with four counts of criminal possession of a weapon in the third degree, Penal Law § 265.02 (7) (counts one through four). These charges are brought pursuant to recently enacted legislation which makes it a class D violent felony to possess an “assault weapon” as that term is now defined by Penal Law § 265.00 (22). Penal Law article 265 was also amended to include an “assault weapon” in the definition of a “firearm” (Penal Law § 265.00 [3] [e]; L 2000, ch 189, § 8). Accordingly, the defendant is also charged with four counts of criminal possession of a weapon in the fourth degree pursuant to Penal Law § 265.01 (1), for the possession of four “firearms,” to wit, four “assault weapons” (counts six through nine). The new assault weapons legislation was enacted to prohibit a specific class of weapons already barred by federal law (see, 18 USC § 921 [a] [30], [31]; § 922 [v], [w]) thus enabling prosecutors to pursue state charges against those who possess these particular types of weapons (Mem of NY State Senate in support of L 2000, ch 189, 2000 McKinney’s Session Laws of NY, at 1642).
As applied here, the People were required to establish by legally sufficient evidence (see, CPL 70.10 [1]) that the four rifles seized from the defendant’s residence were “assault weapons” within the meaning of Penal Law § 265.00 (22). Penal Law § 265.00 (22) defines an “assault weapon,” in relevant part, as follows:
“(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least two of the following characteristics:
“(i) a folding or telescoping stock;
“(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
“(in) a bayonet mount;
“(iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor;
“(v) a grenade launcher * * *
“(e) provided, however, that such term does not *773 include * * * (ii) a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition” (emphasis provided).
The People presented one witness before the grand jury. Police Officer Robert Schneider testified that on April 14, 2001, at approximately 11:30 p.m. he went to the defendant’s residence located at 38 Essex Street, Brooklyn, in response to a complaint by a neighbor that a light skinned male with a beard was firing what appeared to be a “machine gun.” According to Officer Schneider, he was voluntarily admitted into the defendant’s house and led to the backyard where he discovered empty shell casings. Upon questioning the defendant, he admitted firing several rounds from a gun because he was angry about a loud party in the neighborhood. He told Officer Schneider the gun he used was in his bedroom.
Officer Schneider ultimately recovered two shotguns, four rifles and a large quantity of ammunition from defendant’s bedroom. Officer Schneider described the four rifles in question as follows: (1) an Eagle Arms 5.56 millimeter semi-automatic rifle with a detachable magazine and a flash suppressor (hereinafter Eagle Arms rifle); (2) a Marlin .22 caliber semiautomatic rifle with a detachable magazine (Marlin rifle); (3) a Winchester .30 caliber semi-automatic rifle with a detachable magazine, a flash suppressor and a bayonet mount (Winchester rifle); and (4) an M-14 .308 caliber semi-automatic rifle with a detachable magazine, a flash suppressor and a bayonet mount (M-14 rifle).
At the completion of Officer Schneider’s testimony, the People submitted ballistics reports regarding the four rifles. All four weapons were examined by the same ballistics expert, Detective Sean Hart. Detective Hart concluded that all four rifles were semi-automatic and operable. Curiously, however, the ballistics reports made no mention of the special characteristics of the rifles as testified to by Officer Schneider except for the Eagle Arms rifle which according to the ballistics report had “a pistol grip, a bayonet lug and a flash suppressor.” Additionally, all of the weapons except for the Winchester rifle were observed to have no magazine.
Generally, it is not a crime, without more, to possess a rifle or shotgun in this state* (People v Crivillaro, 170 AD2d 312). In order for the rifles in this case to qualify for inclusion under *774 the statutory sanctions of subdivision (22) of section 265.00 of the Penal Law they must at a minimum be able to accept a detachable magazine that is able to hold more than five rounds of ammunition and have at least two of the above-listed characteristics. The evidence before the grand jury was factually insufficient upon which to base a true bill.
No testimony or other expert evidence was introduced to establish that the semi-automatic rifles were capable of accepting a detachable magazine holding more than five rounds. The new statute expressly excludes rifles and shotguns that cannot accept a detachable magazine holding more than five rounds (see, Penal Law § 265.00 [22] [e] [ii]). The People should have included this information in the ballistics reports in order to satisfy this requirement. Determining whether a semiautomatic rifle is capable of holding a magazine of more than five rounds requires the specialized knowledge of a ballistics expert or someone familiar with assault weapons to assist the jurors in making this factual determination. It was certainly not enough for Officer Schneider to merely testify that the rifles were capable of holding a detachable magazine.
Additionally, the Court notes that Officer Schneider’s testimony was inconsistent with the ballistics reports in several key respects. For example, Officer Schneider testified that both the M-14 and the Winchester rifles had flash suppressors and bayonet mounts. Yet the ballistics reports made no mention of these characteristics. This omission is significant in view of the fact that the Eagle Arms ballistics report itemized all the characteristics found on that rifle consistent with an “assault weapon.” Why then would the same ballistics expert who tested all of the rifles and who is clearly aware of what traits are necessary to support assault weapon charges include this vital information in one report but omit it as to all the others? It is also noteworthy that while the ballistics report for the Eagle Arms rifle indicated it had a bayonet mount and pistol grips, Officer Schneider testified that it had no bayonet mount or pistol grips. Finally, the only statutory characteristic identified on the Marlin rifle by any of the evidence was a “detachable magazine.” Based upon the foregoing, the Court has no alternative but to dismiss all of the counts where possession of an “assault weapon” is an essential element of that charge (counts one through four and counts six through nine).
*775 That said, the Court strongly recommends that prosecutors apply some degree of consistency in presenting evidence before the grand jury necessary to support “assault weapon” charges pursuant to the new statute. In the Court’s view, the preferable practice, as indicated above, would be to include all of the necessary characteristics needed for an “assault weapons” charge in the ballistics report (see, CPL 190.30 [2]). In the event that the People intend to rely on testimonial evidence in order to establish the essential elements of an “assault weapon,” the People should at a minimum lay a proper foundation to demonstrate that the witness testifying before the grand jury has some pertinent knowledge of the difference between an ordinary rifle and a “semiautomatic rifle” that is considered an “assault weapon.”
Accordingly, the defendant’s motion to dismiss counts one through four and counts six through nine is granted with leave to re-present.
Defendant’s request pursuant to CPL 710.60 (2) seeking to suppress physical evidence is denied. However, defendant’s request for a Payton/Dunaway /Mapp heáring is granted.
Defendant’s request for a Huntley hearing is also granted.
A Sandoval hearing is ordered to be held prior to trial.
The motion pursuant to CPL 255.20 (3) to reserve the right to make supplemental motions is denied, except for good cause.

 The weapons statutes do, however, prohibit possession of a “sawed-ofí” rifle or shotgun and there are certain People who are prohibited from pos *774 sessing a rifle or shotgun or from possessing them at a certain location (see, Penal Law § 265.01 [3], [4], [6]; Penal Law § 265.02 [1], [3]; also see, Donnino, Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 265, 2001 Pocket Part, at 10).